May it please the Court. My name is Melanie Morgan. I represent U.S. Bank. Continuing with the last argument, the panel has asked whether the question of whether representation in a CCNR that a foreclosure would not extinguish a first seat of trust constitutes an irregularity that may rise to the level of fraud, oppression, or unfairness. And as touched on earlier, we believe that is a question that should be certified simply because of the conflicting unpublished opinions we have. And the fact that the closest published case that we do have on point, which is the Shadow Canyon case, came to the Court in a different posture and through a different lens. The Shadow Canyon Court was considering, well, prior to Shadow Canyon, we had Shadow Wood. And the question there was, is price alone enough to justify setting aside a sale? And the answer was no. So with that posture, the Court considered Shadow Canyon. The question being, well, what do we need to show to set aside a sale? And the Court, of course, rejected the Restatement Brightline 20% rule that it's generally enough to set aside a sale. Counsel, your time is short, and I'd like to ask you the following question. It seems clear to me from the published cases of the Nevada Supreme Court that the circumstances of the sale itself must be affected by fraud, unfairness, or oppression. So what evidence is there in this record, for example, reliance on a distributor or some other evidence that the existence of this clause affected the sale? And I think the evidence that we pointed to in our briefing and in the record was the presence of the CC&R clause itself. Well, it's there, but it must affect the sale under the Resources Group case and under Shadow Canyon itself. It says it has to affect the sale in question for it to constitute unfairness, fraud, or oppression. So is there any evidence whatsoever, other than the bare existence of this clause, that shows that there was any effect on the sale itself in this case? I think the closest that we would have would be reliance. It affected, certainly affected... What evidence of reliance? Is there a declaration or other statement under oath that there was reliance on this clause by someone? No. Candidly, Your Honor, there's no evidence in the record that there was specific reliance on this CC&R provision. I'm sorry. Go ahead. I was just going to point out that the closest I think we have to reliance is how the HOA intended the clause to be relied upon. And the record does show at page 499 of Article 13 that the entire reason that the HOA included that provision was to induce mortgages to lend so that the properties could be sold. So the provision protecting those deeds of trust was included by the HOA for the specific purpose of inducing mortgages to lend, to lull them into a sense of security. That's all theoretical. As I understand it, you are not pointing to any evidence that this specific sale was affected in terms of price or timing or anything else. That's correct, Your Honor. We would stand for the proposition that there does not have to be that causal connection. Let me ask about that, the causal connection. So the Nevada Supreme Court does have the language about it has to affect the sale. Not so much in this opinion, though it does say some of that language in Shadow Canyon. But then they have in their footnote where they say in HOA's representation that the foreclosure sale will not extinguish the first deed of trust. And they reference Daison, which if I recall correctly has no evidence either about it affecting sale. We recently heard that a letter to the lien holder pre-foreclosure form letter isn't going to have any effect on chilling bidding. So is this an internal conflict in the Supreme Court's jurisprudence or is there some other way to understand this reference to Daison and this statement about an HOA's representation? Your Honor, it is an internal conflict and that's also evidenced by the conflicting unpublished opinions we have. We have the San Florentine case where there was no causal connection found between the irregularity and the sales price. And then that conflicts with the TRP Fund 4 case that does say you need that causal connection. I think we also have inconsistencies within the Shadow Canyon opinion itself with footnote number 11. Some of the examples that were identified as maybe rising to the level of an irregularity sufficient to set aside the sale. It's hard to see how those could ever impact the sales price itself such as a misrepresentation by the HOA. And so because we have those inconsistencies, there's a lack of clarity on this point specifically with causation. And that is a great reason for why this question should be certified so we can have clarity on what is the causation element for this fraud, oppression, or unfairness. I'm sorry. Let me ask a more general question. You again mentioned a conflict with the court's own unpublished opinions as a reason why this question should be certified, right? Yes, Your Honor. That doesn't seem to come within the reasons for certification laid down by the Supreme Court's own rules, does it? Well, one of the questions... If our opinions are confused, that's a reason for certification. Well, one of the problems for certification is, is there no controlling precedent from the Nevada Supreme Court? There is controlling precedent because under the Supreme Court's own rules, it's the published decision that's precedent in controlling, right? That's correct, Your Honor. Isn't that the court's own rules? Well, we argue that Shadow Canyon, of course, is controlling. It's published. But within Shadow Canyon, there's an inconsistency, specifically when it comes to the causation. Does the fraud, oppression, or unfairness, must it cause or bring about that low sales price? So what are you saying? The opinion is internally inconsistent? Yes, Your Honor. I don't know. That's the reason. You know, that's a tough criticism to make of the Supreme Court, isn't it? Well, I think I understand why. And it's because when this case came, the Shadow Canyon case, was viewed through the lens of, is a low sales price enough? And the answer was no. So the court said, per se, a low sales price can't be enough. So you have to look at that unfair low sales price, and it's a sliding scale. The greater disparity in the sales price, the less unfairness you need. The higher sales price, the less unfairness. So it's a sliding scale. So I don't see that there's an inconsistency, because the court there said that there has to be an effect on the sale. Not on the sales price. They gave the example of failure to contest the sale. So I'm not sure where you're seeing an inconsistency within Shadow Canyon itself. It says that there has to be unfairness that affects the sale in some way. Not the price, necessarily. Although it could. I guess the question is whether a misrepresentation in 2011 could ever have an effect on a sale, even theoretically. As laid out in D-Zone, because D-Zone is the example they use. That's correct. How will a representation by an HOA affect the sale, and specifically in a CCNR's situation? I think if that's the standard, that the causation is it must simply affect the sale, then certainly it could affect the sale if a beneficiary of a deed of trust is lulled into a false sense of security and believes that their security interest isn't in jeopardy because of the representations made in the CCNRs. Counsel, you have exceeded your time, but we asked a lot of questions, so you may have a minute for rebuttal when the time comes. Thank you. We'll hear from Mr. Martinez, I believe. Good morning, Your Honors. May it please the Court, my name is Jason Martinez. I represent SFR Investments Pool 1 LLC. Could you speak a little louder, please? Sure. I want to quickly touch on the reasons why, essentially, a mortgage protection clause, which was the very particular question asked by this panel, whether a mortgage protection clause in and of itself, on its own, can constitute unfairness. And I would posture that the question to that answer for certification is definitively no. And it's for two reasons, actually. First, the Nevada Supreme Court has long recognized that mortgage protection clauses in CCNRs are unenforceable because they violate NRS 116.1104. And in numerous recent decisions, unpublished although, at page 26 of our brief, we actually cite all four of them, in those decisions, the Nevada Supreme Court has systematically rejected any argument that the CCNRs themselves can constitute unfairness. Would a private letter be enforceable? So if a representation is made in a private letter, is that enforceable? Well, first, that's a hypothetical question for this case because there isn't anything other than the mortgage protection clause. But to answer Your Honor's question, essentially what you're saying is if there's something more than the mortgage protection clause. And I would say it's possible, but it's not probable, and it certainly cannot happen. Because you can't have an agreement that statutes as, you can't have an agreement that this statute is unwaivable. So I assume a private letter representation also would be unenforceable. Correct. Under the same guidance that the Nevada Supreme Court has given regarding the mortgage protection clause. Okay, so then how do we understand in Statement 11 that, in effect, a CCNR and private letter, which as well was in the zone, is an example of an irregularity that could arise to the level of fraud? We have to assume that in the zone, neither of those two items was enforceable, and yet the Supreme Court calls them out. So help me understand what they were meaning there. Well, I don't know that I can actually answer what I understand what they were doing there. One, because I don't think it affects this case because all it's here is a mortgage protection clause, but also... We need to understand and give effect to it. As Judge Tishkama said, the published opinion is controlling, and the published opinion tells us that the sort of irregularity that we see in the zone, which are two, one is in the CCNR and one is in the letter, can arise to that level of fraud and unfairness to set aside a sale. So we need to understand what that means. Well, if you're trying to understand why the Nevada Supreme Court put that in the footnote, the question is because they're providing examples of things that might be unfairness. But that doesn't negate the analysis you'd actually have to go through in Shadow Canyon, which is very fact-specific, and it's kind of one of the points that Judge Graber got at regarding... Do you think the transfer would be a basis for setting aside the sale? A CCNR and letter would be a basis under some circumstances, or do you think they just threw in an example that they knew had no bearing on their... It's possible that in that circumstance it could set aside a sale. However, whatever that additional evidence was beyond the mortgage protection clause would have to have chilled bidding, and that would have to have been proven by the... Judge Graber just told us he couldn't imagine a scenario where it would chill bidding. Well, I can't really speculate as to the scenarios. I mean, I would agree with Mr. Hastings in the prior case that I don't really think there would ever be a scenario where they would actually chill bidding because in the context of a private letter... What significance in this footnote 11 that is the subject of so much of our conversation, what is the significance of the word representation? And HOA's representation, to me, suggests something specific. Telling someone, oh, don't worry, this isn't really void. The foreclosure sale won't extinguish anything. It doesn't talk about anything other than a representation, which suggests a conversation of some sort, either oral or written, with someone. Does that understanding resolve or would that way of interpreting it resolve any ambiguity in the case? Yeah, I mean, in that circumstance, you're talking about something other than a general representation like in a mortgage... It doesn't say general or specific, right? So when the HOA enters into CCNRs and signs it, I assume that all the representations that the HOA makes in the CCNR are representations. Are you disagreeing with that? Well, no, I'm not disagreeing that anything put in the CCNRs you could potentially interpret as a representation. What I'm saying is that no matter what circumstance you have, whether it be something in the CCNRs or something outside the CCNRs, like a separate letter, in any event, the bank would have to show that it knew about that particular representation. And because of that representation, they did not attend the sale or bid or something. They would have to connect it to the price paid. Some opposing counsel argued that the HOA put that representation into the CCNRs in order to induce lenders to lend. Because I assume a lender wouldn't be interested in lending if their loan could be overturned by unpaid dues. I mean, that would be part of their due diligence. So it would be hard to imagine that the lender wasn't aware of this representation in the HOA, I assume. Well, even if they weren't specifically aware, they'd be on record notice of the CCNRs, which also, if you're relying on the CCNR provisions, also includes a provision at Section 17.14 indicating that the CCNRs have to comply with NRS Chapter 116. So it's unenforceable. I wonder, given what you just said about the long history of it being unenforceable, I wonder why it is that buyers and sellers and HOAs relied on it. Is there any basis for that? Or is it just everyone knew they were unenforceable? Well, I don't know that anybody relied on this provision because nobody has ever, and I've done a lot of these cases, I have never seen anybody present evidence that they relied on the Mortgage Protection Clause as a reason not to attend the sale and not bid. Why does the Nevada Supreme Court provide this as an example? Were they just wrong? Is that the problem here? I mean, obviously we're bound by it, whether they were wrong or not. No, I think what they're really referring to is essentially a circumstance where there's fraud. And that's the kind of representation they're talking about from an HOA because in that circumstance, it would be conceivable that there would be some kind of connection to bid shilling at that circumstance. But there wasn't any fraud in Dizon, which is the case they rely on. But there was another letter outside of the Mortgage Protection Clause. Right, but that wasn't fraudulent either. It was equally unenforceable. It was equally a form letter, at least according to one of the counsel today. Yeah, well, I mean, in the context of Dizon and in all four of the unpublished decisions that I cited in our brief at page 26, the Nevada Supreme Court actually distinguishes these and says, look, that's totally separate from solely a Mortgage Protection Clause being your only grounds for unfairness. Yeah, but they don't really have any explanation of why it's completely unreasoned. I guess you could expect an unpublished decision. I mean, have they given some rational basis for it? They might have been more persuaded, but they just say, well, we have to we we have to in an unpublished format, distinguish our published ruling. Well, in that circumstance, it ends up being an entirely fact specific analysis. And when you're talking about a letter, you would have to look at context, the context of that letter, when it was sent, you know, what actually was represented in that particular letter. And then I also think you have to look at the particular entity you're sending it to. So if it goes to a bank who never tendered, never, ever went to the foreclosure sales, no matter what kind of notice or anything they were told, then in my opinion, that would not have chilled bidding because it definitely didn't go to any of the other bidders at the sale. This letter only went to the bank entity. And if the bank entity wouldn't have gone to the sale bid or paid the super priority amount in advance anyway, then there was a matter of public record. So anyone could look at it. Well, I mean, it was the CCNR was more effective. If anything was going to children. Well, the mortgage protection cost couldn't possibly chill bidding because of the fact that everybody's presumed to know the law. Letters are enforceable also. So that couldn't by the same token that couldn't chill. Well, yeah, in that respect, you could actually get a published decision by the Nevada Supreme Court that came out recently. And it was Wells Fargo Bank versus Radecki. And it's 134 Nevada 619. And in that particular case, they said that a party's subjective belief as to the effect of a foreclosure sale cannot alter the sales actual legal effect. So, in other words, even if the representation by the HOA in the letter is you're not going to be extinguished, that published decision actually tells you the Nevada Supreme Court would not give weight to those letters anymore. So that provides further clarification that they're basically almost getting rid of the footnote in Shadow Canyon. Because Radecki tells you that that representation can't have any force in effect at all. And it can't possibly rise to the level of unfairness. And for all the reasons I've discussed, your honors, I think you have perfect grounds to affirm in this circumstance. And there's definitely no grounds to reverse. Unless there's any other questions. Thank you, your honors. Ms. Morgan, you may have a minute for rebuttal. Thank you, your honor. What counsel just argued is that footnote 11 should be read out of Shadow Canyon, that it really has no effect. And if that's going to be the law, then that needs to come from the Nevada Supreme Court. And that is why we're promoting that this question should be certified. Because of all of the inconsistencies and all of the things that we've discussed about how difficult it is to interpret footnote 11, when really it just says what it says, an HOA's representation. And that's what the CCNRs are. And whether certainly the HOA thought that its representation was accurate and enforceable when it reported the CCNRs, I believe in 2005, that was after 116 was adopted. And so counsel said what they're really talking about is fraud. But I don't see that language anywhere or that limitation anywhere in footnote 11. It talks about irregularities that may rise to the level of fraud, unfairness, or oppression. Thank you, counsel. Thank you. You have exceeded your time. All right, thank you. And I think we understand well the positions of both parties. With that, this case is submitted. And we thank you both for helpful arguments.
judges: Tashima, Graber, Ikuta